# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| **Fraud Free Transactions LLC,** *Plaintiff,* v. **Ping Identity Corporation,** *Defendant.* | Case No. _____ JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Fraud Free Transactions LLC ("FFT" or "Plaintiff") files this Complaint against Ping Identity Corporation ("Ping") and alleges:

## I.  NATURE OF THE ACTION

1. This is an action for infringement of United States Patent Nos. 12,093,950 ("the '950 Patent") and 11,551,215 ("the '215 Patent") (collectively, "the Asserted Patents") under the United States Patent Laws, 35 U.S.C. § 1 *et seq*.

## II.  THE PARTIES

2. Plaintiff FFT is a Delaware limited liability company with its registered office located at VCORP Services LLC, 108 W. 13th Street, Suite 100, Wilmington, Delaware 19801.

3. Upon information and belief, Defendant Ping is a corporation organized under the laws of Delaware with its registered agent located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

### III. JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. §§ 271, 281, and 284–285.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Ping because Ping is a Delaware corporation and has purposefully availed itself of the benefits and protections of Delaware state law by incorporating under Delaware law.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1891 and 1400(b), because Ping is a Delaware corporation and thus resides in this District.

### IV. BACKGROUND

8. Dr. Michael Sasha John ("Dr. John") is a named inventor on more than 110 patents directed to the areas of signal processing, computer algorithms, and statistical analysis of biological signals. Many of Dr. John's patents have been successfully licensed and serve as the core intellectual property of several companies.

9. With the goal of preventing identity fraud, Dr. John designed an innovative process for verifying electronic identities and transactions to enhance the legitimacy, authenticity, and validity of online transactions.

10. Dr. John filed several patent applications related to identity authentication—resulting in multiple granted patents including the Asserted Patents.

11. Dr. John co-founded Koakia ("Koakia") in 2009 to develop a platform for real-time identity and transaction verification and proactive online fraud prevention. Koakia is the predecessor-in-interest of FFT.

12. Dr. John worked to develop a functional and scalable prototype, user interface, and business materials under the name Fraud Free Transactions while actively seeking capital to commercialize the technology.

13. On March 22, 2023, Dr. John assigned the Asserted Patents to FFT.

## V. THE ASSERTED PATENTS

14. The U.S. Patent and Trademark Office issued the '950 Patent, titled "Fraud Deterrence for Secure Transactions," on September 17, 2024. A true and correct copy of the '950 Patent is attached as Exhibit 1.

15. The U.S. Patent and Trademark Office issued the '215 Patent, titled "Fraud Deterrence for Secure Transactions," on January 10, 2023. A true and correct copy of the '215 Patent is attached as Exhibit 2.

16. FFT is the owner by assignment of the Asserted Patents.

## VI. THE PING ACCUSED PRODUCTS

17. FFT incorporates by reference the preceding paragraphs.

18. The Ping products accused in this lawsuit ("Ping Accused Products"), as presently known to FFT, are Ping's identity management services including the PingOne system ("PingOne"), including cloud-based and customer-hosted versions of these systems.

19. Upon information and belief, PingOne is a cloud-based identity as a service (IdaaS) framework for secure identity access management, which enables an organization to manage users to access applications that they are authorized to use.

20. Upon information and belief, PingOne's threat protection increases trust and reduces fraud via smart detection, dynamic policies, risk insights, seamless integration, and centralized management.

21. Upon information and belief, PingOne uses risk policies defined by different predicators to determine a risk level associated with a user attempting to access an application as a part of a transaction.

22. Upon information and belief, based on the risk level, PingOne determines if access should be provided or if a secondary verification should be employed.

23. Upon information and belief, PingOne includes PingOne MFA service that provides MFA as secondary verification for protecting an organization's network, applications, and data resources.

24. Upon information and belief, PingOne further includes PingID service and mobile application that provides an adaptive MFA solution to provide a secure means of authentication for members of organizations, partners, or customers.

25. Upon information and belief, PingOne MFA and PingID facilitate a variety of authentication methods using mobile applications to be installed on various devices including a mobile device.

### VII.  COUNT 1 – INFRINGEMENT OF THE '950 PATENT BY PING

26. FFT incorporates by reference the preceding paragraphs.

27. Ping has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least claims 1 and 2 of the '950 Patent by making, using, offering to sell, and/or selling (directly or through intermediaries) in this District and elsewhere in the United States, and/or importing into the United States, the Ping Accused Products.

28. Claim 1 of the '950 Patent recites:

**1.** A non-transitory computer readable storage medium storing instructions that, when executed by one or more processors, configure one or more executing processors to:

    receive a request to access a software program, wherein the software program has a rule set associated therewith, the rule set at least situationally restricting access to the software program, the rule set including:

      a plurality of configurable rules that define determinations for verification of a user identity of users requesting access to the software program, and that include one or more configurable parameters, associated with one or more of the plurality of rules, that designate situational applicability of a given rule for which a given parameter is defined,

      wherein the rules of the rule set are configurable with respect to, and collectively include, at least:

        identification of characteristics, including least an originating IP address, from which the request originated, a device ID of a device from which the request originated and an originating geographic location from which the request originated, to be considered for verification of the identity, including association of at least one stored value with a respective one of a plurality of the characteristics including at least the originating IP address, the originating device ID and the originating geographic location, and wherein the instructions configure the executing one or more processors to utilize the originating IP address to obtain the originating geographic location;

        definition of a plurality of determinations, based on the characteristics, including at least a plurality of determinations defined for a plurality of the rules of the rule set;

        definition of what constitutes a determination being met for the plurality of determinations; and

        definition of an action to be taken responsive to an outcome of analysis of a given of the rules, including at least:

          one first action for a first rule type that is based on first ones of the determinations, the first action permitting access to the software program absent multi-factor authentication (MFA) and based on a first one of the outcomes indicating a first condition where the first ones of the determinations resulted in expected values for first present values of first ones of the characteristics included in the first ones of the determinations,

          one second action for a second rule type that is based on second ones of the determinations, the second action requiring at least one first configurable MFA action in order to access the software program and based on a second one of the outcomes indicating a second condition where one or more of the second ones of the determinations resulted in at least one

5

unexpected value for at least one second present value of at least one second one of the characteristics included in the second ones of the determinations,

one third action for a third rule type that is based on third ones of the determinations, the third action requiring at least one second configurable MFA action in order to access the software program and based on a third one of the outcomes resulted in a third condition indicating one or more of the third ones of the determinations indicated potential fraud based at least one third present value of at least one third one of the characteristics, of the third ones of the determinations, corresponding to a risky value indicative of risk and stored in association with the third one of the characteristics;

wherein the first and second configurable MFA actions are configurable with respect to at least:

definition of whether a respective one of the first or second configurable at least one MFA actions includes at least one specifically-required authentication action to be undertaken by a user; and

definition of whether a respective one of the first or second configurable at least one MFA actions includes a choice of a plurality of authentication actions to be undertaken by the user, including, definition of two or more different selectable MFA actions from which the choice can be made;

analyze first data associated with the received request to determine whether the one or more of the configurable rules having the configurable parameters defined therefor apply to the received request based on correlation of the analyzed data to the configurable parameters;

derive an applicable rule set including at least:

the one or more of the configurable rules determined to apply based on the configurable parameters;

any default rules designated as applicable to the requests for the software; and

at least one rule type of the first type, second type and third type;

analyze the determinations of one or more of the rules of the applicable rule set, including determination of whether the respective outcomes of respective analyzed determinations indicate at least one of the first, second or third conditions;

responsive to at least one of the second or third conditions being indicated by the respective outcomes, instruct a user, who submitted the received request, to undertake at least one

respective first or second configurable MFA action based on which of the respective second or third conditions was indicated;

receive MFA results of the respective first or second MFA action having been undertaken by the user; and

responsive to the MFA results indicating successful authentication, provide access to the requested software program.

29. Claim 2 of the '950 Patent recites:

**2**. The system-non-transitory storage medium of claim **1**, wherein one or more of the first, second or third ones of the determinations are based at least on the originating IP address and include comparison of the originating IP address to one or more designated IP addresses.

30. As detailed in the exemplary claim chart attached as Exhibit 3, the Ping Accused Products infringe at least claims 1 and 2 of the '950 Patent. FFT incorporates Exhibit 3 into its Complaint by reference. The allegations in Exhibit 3 are made on information and belief and are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. As explained in detail in Exhibit 3, the Ping Accused Products practice every element of at least claims 1 and 2 of the '950 Patent and therefore Ping infringes the '950 Patent.

31. This infringement of the '950 Patent has caused damage to FFT, and FFT is entitled to recover damages adequate to compensate FFT for Ping's infringement.

32. FFT has also suffered, and will continue to suffer, irreparable harm because of Ping's infringement of the '950 Patent for which there is no adequate remedy at law, unless the Court enjoins Ping's infringement. Accordingly, FFT seeks a permanent injunction enjoining Ping from making, using, selling, offering to sell, and/or importing the Ping Accused Products and/or otherwise infringing, or inducing or contributing to the infringement of the '950 Patent.

## VIII. COUNT 2 – INFRINGEMENT OF THE '215 PATENT BY PING

33. FFT incorporates by reference the preceding paragraphs.

34. Ping has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least claim 22 of the '215 Patent by making, using, offering to sell, and/or selling (directly or through intermediaries) in this District and elsewhere in the United States, and/or importing into the United States, the Ping Accused Products.

35. Claim 20 of the '215 Patent recites:

**20.** A method of validating a request for access to software having a use restriction associated therewith, comprising:

receiving a request from an identified requestor for access to the software from a first computing device;

responsive to receiving the request, communicating with a fraud prevention application installed on a predefined out-of-band mobile phone, the mobile phone different from the first computing device and identified by a profile associated with the requestor;

obtaining approval or denial of the request from the application executing on the mobile phone;

determining whether the request was approved or denied based on a response from the application; and

responsive to the response indicating approval, processing the request to permit access to the software.

36. Claim 22 of the '215 Patent, which depends on independent claim 20 via the intervening dependent claim 21 (also reproduced below), recites:

**21**. The method of claim **20**, wherein the obtaining includes presenting, via the application executing on the mobile phone, a selectable option related to permitting the request.

**22**. The method of claim **21**, wherein the presenting includes presenting a pop-up notification displayed to a user of the mobile phone.

37. As detailed in the exemplary claim chart attached as Exhibit 4, the Ping Accused Products infringe at least claim 22 of the '215 Patent. FFT incorporates Exhibit 4 into its Complaint by reference. The allegations in Exhibit 4 are made on information and belief and are likely to

have evidentiary support after a reasonable opportunity for further investigation or discovery. As explained in detail in Exhibit 4, the Ping Accused Products practice every element of at least claims 20 and 22 of the '215 Patent and therefore Ping infringes the '215 patent.

38. This infringement of the '215 Patent has caused damage to FFT, and FFT is entitled to recover damages adequate to compensate FFT for Ping's infringement.

39. FFT has also suffered, and will continue to suffer, irreparable harm because of Ping's infringement of the '215 Patent for which there is no adequate remedy at law, unless the Court enjoins Ping's infringement. Accordingly, FFT seeks a permanent injunction enjoining Ping from making, using, selling, offering to sell, and/or importing the Ping Accused Products and/or otherwise infringing, or inducing or contributing to the infringement of the '215 Patent.

## IX.  PRAYER FOR RELIEF

WHEREFORE, FFT asks the Court to:

A. Find that Ping has directly infringed, either literally or under the doctrine of equivalents, at least one claim of each of the Asserted Patents;

B. Award FFT damages adequate to compensate it for Ping's infringement of the Asserted Patents through the date of judgment, with pre-judgment interest, and for any supplemental damages as appropriate and post-judgmental interest after that date;

C. Enter a permanent injunction against Ping and those in privy or active concert with it against further infringement of the Asserted Patents, or alternatively, award FFT a compulsory ongoing licensing fee;

D. Find that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding FFT attorney fees, costs, and expenses incurred in connection with this action; and

E. Award FFT such other and further relief at law or equity as this Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

FFT requests a trial by jury.

Dated: November 4, 2024

Respectfully submitted,

Of Counsel:

John S. LeRoy
Thomas A. Lewry
Sangeeta G. Shah
Reza Roghani Esfahani
(*Pro Hac Vice* forthcoming)
**BROOKS KUSHMAN P.C.**
150 W. Second St., Suite 400N
Royal Oak, Michigan 48067-3846
(248) 358-4400 / Fax: (248) 358-3351
Email: jleroy@brookskushman.com
 tlewry@brookskushman.com
 sshah@brookskushman.com

**PINCKNEY, WEIDINGER, URBAN & JOYCE LLC**

/s/ *Helena C. Rychlicki*
Helena C. Rychlicki (#3996)
Megan Ix Brison (#6721)
2 Mill Road, Suite 204
Wilmington, Delaware 19806
(302) 504-1497
Email: hrychlicki@pwujlaw.com
 mixbrison@pwujlaw.com

*Attorneys for Plaintiff*